## A03A0988. HALL v. THE STATE.
(581 SE2d 695)

PHIPPS, Judge.

Willie Hall was convicted of aggravated assault, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. Because Hall had five prior felony convictions (all obtained through negotiated guilty pleas), he was sentenced as a recidivist pursuant to OCGA § 17-10-7 (c). In this appeal, Hall challenges the admission of three of his prior felony convictions on

grounds that the transcript of the guilty plea hearing fails to show that he entered the pleas knowingly and voluntarily. Hall also complains of various of the court's jury instructions. Finding no merit in any of Hall's claims of error, we affirm.

The State's evidence was relatively simple. Testimony given by the investigating police officer and by the victim, Antonio Roberts, showed that Roberts had been shot in the face by Hall in the doorway of his home after he refused to allow Hall to enter his house with a gun. Roberts told the investigator that he could identify his assailant but did not know his name. After the investigator received a tip identifying Hall as the perpetrator, he incorporated Hall's picture into a photographic spread and displayed it to Roberts, who immediately identified Hall as the shooter. During the investigation, Hall telephoned the investigator and denied any knowledge of the shooting but refused to come in for questioning. After being arrested about eight months later, Hall admitted that he had been at Roberts's house at the time of the shooting but denied being the shooter. At a subsequent parole revocation hearing, Hall denied having been present at Roberts's house at the time of the shooting, although he admitted being there earlier. At trial, Hall testified that he was at Roberts's house at the time of the shooting and that he did, in fact, shoot Roberts, but that the shooting was accidental. Testimony given by Roberts authorized the jury to find that Hall shot him intentionally.

In the first phase of a bifurcated trial, the jury found Hall guilty of aggravated assault and possession of a firearm during the commission of a crime. At the next phase of the trial, the prosecution introduced State's Exhibit 3, showing that Hall had two prior felony convictions for forgery in the first degree and various misdemeanor convictions. Based on this evidence, the jury found Hall guilty of possession of a firearm by a convicted felon.

A sentencing hearing was then held at which the prosecution admitted State's Exhibits 4, 5, and 6, showing that Hall had two prior felony convictions for sale of cocaine, one prior felony conviction for possession of cocaine, and other misdemeanor convictions. Under OCGA § 17-10-7 (c), three prior felony convictions require the recidivist defendant, upon conviction for subsequent felonies, to serve the maximum time provided in the sentence of the judge without being eligible for parole until the maximum sentence has been served. Hall was sentenced accordingly.

In moving for a new trial, Hall claimed among other things that his trial attorney was ineffective in failing to object to the court's consideration of State's Exhibits 4, 5, and 6, because the record fails to show that the guilty pleas upon which those convictions were entered were knowing and voluntary. The trial court denied Hall's motion for new trial.

1. In reliance on *Boykin v. Alabama*,[1] *Nash v. State*,[2] and *Donaldson v. State*,[3] Hall claims that invalidity of his prior guilty pleas precluded the trial court's consideration of them in imposing recidivist punishment.

*Boykin* involved the direct appeal of a conviction allegedly based upon an uninformed guilty plea. Under *Boykin*, where a prisoner challenges the validity of a guilty plea,

> the burden is on the state to show that the plea was intelligently and voluntarily entered. The state may accomplish this end by two means, (1) showing on the record of the guilty plea hearing that the defendant was cognizant of all of the rights he was waiving and the possible consequences of his plea; or (2) fill[ing] a silent record by use of extrinsic evidence that affirmatively shows that the guilty plea was knowing and voluntary.[4]

In *Parke v. Raley*,[5] however, the United States Supreme Court later held *Boykin* inapplicable where recidivist defendants collaterally attack prior guilty pleas sought to be used in enhancement of punishment. The Court concluded that in that context, a state court may presume, at least initially, that a final judgment of conviction entered on a guilty plea was validly obtained.

Adopting *Parke v. Raley*, the Supreme Court of Georgia in *Nash v. State* revised the scheme then in effect in Georgia for allocating burdens of proof in collateral attacks of guilty pleas. *Nash* placed the initial burden on the State to prove both the existence of the prior guilty plea and that the defendant was represented by counsel in felony cases. Upon such a showing,

> the burden shifts to the defendant to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. "Defendant can attempt to meet his burden of production with a transcript, with testimony regarding the taking of the plea, or with other affirmative evidence." [Cit.] . . . If the defendant is able to present evidence that a constitutional infirmity exists, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of

---

[1] 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969).
[2] 271 Ga. 281 (519 SE2d 893) (1999).
[3] 244 Ga. App. 89 (534 SE2d 839) (2000).
[4] *Roberts v. Greenway*, 233 Ga. 473, 475 (1) (211 SE2d 764) (1975), citing *Boykin*.
[5] 506 U. S. 20 (113 SC 517, 121 LE2d 391) (1992).

the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, . . . the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the . . . *Boykin* rights. [Cit.][6]

In *Donaldson v. State*, we vacated a recidivist sentence and remanded for further proceedings, because the defendant met his burden by producing a guilty plea transcript which failed to establish that he was informed of his *Boykin* rights and knowingly waived them; and the prosecution failed to meet or even recognize that the burden then shifted back to the State to show the validity of the plea.

In *Bazemore v. State*,[7] the Supreme Court of Georgia later held that the recidivist defendant had carried his burden of showing the invalidity of a prior conviction entered on guilty pleas, where the guilty plea transcript did not reflect any colloquy with the defendant to ensure that he understood the constitutional rights he was waiving; a form given to the defendant merely acknowledged that his probation would be unsupervised; the defendant testified unequivocally that he was not advised of his rights when he entered the pleas; and his lawyer did not remember the case.

In this case, the guilty plea transcript does not show a waiver of Hall's *Boykin* rights, but before entering his pleas Hall signed forms in which he acknowledged that he was aware of such rights and was waiving them. Specifically, the forms stated that

Defendant . . . PLEADS GUILTY and waives the right to trial by jury; the presumption of innocence; the right to confront witnesses against oneself; the right to subpoena witnesses; the right to testify and to offer other evidence; the right to assistance of counsel during trial; the right not to incriminate oneself; and that by pleading not guilty or remaining silent and not entering a plea, one obtains a jury trial.

Hall does not deny that he read these forms and was thus aware of his waiver of constitutional rights when entering his guilty pleas.

---

[6] *Nash*, supra at 285.
[7] 273 Ga. 160, 161 (1) (535 SE2d 760) (2000).

Therefore, the trial court was authorized to find that the State met its burden of proving that Hall's prior guilty pleas were validly entered.

2. Hall complains that the trial court committed harmful error in its jury charge on the credibility of witnesses by pointing out that the jury had the right to take into consideration the fact that the defendant was interested in the outcome of the prosecution.

There is no merit in this complaint. The jury instruction at issue was approved in *Walker v. State*.[8] There, the Court recognized that "[t]his interest of a witness in the result of the matter on trial, whether civil or criminal in nature, or lack thereof, is a matter which the jury is always authorized to consider in passing upon his credibility ([cits.]), and it is especially true where the witness is himself a party to the cause. [Cit.]"[9] In the complained-of charge, the jury was appropriately informed that, in taking into consideration the defendant's interest in the case, it was judging his credibility the same as that of any other witness. *Walker*'s approval of this charge was itself approved by our Supreme Court in *Johns v. State*,[10] and these decisions continue to be followed.[11] Contrary to arguments advanced by Hall, no intervening decision by either the Supreme Court of Georgia or the United States Supreme Court calls the validity of this charge into question.[12]

3. Hall contends that the trial court erred in charging the jurors, in connection with his defense of accident, that if they should believe from the evidence as a whole that he was guilty beyond a reasonable doubt, it would be their "duty to convict."

As recognized by Hall, our Supreme Court has discouraged the use of a jury instruction that suggests to the jury that it has a "duty to convict" in the absence of reasonable doubt, and has found that the

---

[8] 132 Ga. App. 274, 278 (5) (208 SE2d 5) (1974).

[9] Id. at 278-279.

[10] 239 Ga. 681, 684 (4) (238 SE2d 372) (1977).

[11] See *Larry v. State*, 266 Ga. 284, 286 (3) (466 SE2d 850) (1996); *Hickson v. State*, 205 Ga. App. 874, 876 (5) (424 SE2d 68) (1992).

[12] Hall argues that this jury charge cannot withstand scrutiny under either *Rock v. Arkansas*, 483 U. S. 44 (107 SC 2704, 97 LE2d 37) (1987), or *Renner v. State*, 260 Ga. 515, 517 (3) (b) (397 SE2d 683) (1990). In *Rock*, the Supreme Court held that a state evidentiary rule prohibiting the introduction of hypnotically refreshed testimony violates a criminal defendant's fundamental constitutional right to testify in his own behalf. The Court in *Renner* held that although the fact that a suspect flees the scene may be relied on by the State as circumstantial evidence of guilt, a trial court should not identify and explain the possible consequences of this one circumstance and not others which might point to innocence. Thus, in *Renner*, the defendant's flight from the scene was treated in a different manner from other evidence in the case. Here, the defendant's credibility was being judged in the same manner as that of other witnesses. Therefore, *Renner* is inapposite, and the defendant's constitutional right to testify was not hampered.

"better practice" is for the trial court to instruct the jury that it is "authorized to convict."[13] The Court, however, has not found the use of the charge to be reversible error, particularly where, as here, the trial court used the language "authorized to convict the defendant" or "authorized to find the defendant guilty" in other portions of its jury charge (i.e., in its preliminary charge to the jury and in its general instructions on reasonable doubt).[14]

4. Finally, Hall complains of the trial court's recharge to the jury on his defense of accident.

In its charge, the trial court correctly informed the jury that no person shall be found guilty of any crime committed by misfortune or accident, where there was no criminal scheme, undertaking, intention, or criminal negligence. The court then correctly provided the definition of "accident" as an event that takes place without one's foresight, expectation, or design. The court, however, incorrectly stated that the term being defined was "act" rather than "accident." After the court had concluded its charge, this mistake was pointed out to the court, and the court recharged the jury that an "accident" is an event that takes place without one's foresight, expectation, or design.

Hall argues that the recharge was inadequate, under the rule that an erroneous instruction can be corrected only by the judge withdrawing it and instructing the jury to disregard it.[15] As argued by the State, however, the rule relied on by Hall applies to jury charges that are legally erroneous.[16] The charge in this case was not legally erroneous. The court, instead, uttered a verbal inaccuracy resulting from a slip of the tongue, and the recharge was clearly adequate to prevent the jury from being confused or misled. Consequently, no reversible error occurred.[17]

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED APRIL 29, 2003 — 

*Jackson & Schiavone, Steven L. Sparger*, for appellant.
*Spencer Lawton, Jr., District Attorney, David T. Lock, Arvo H. Henifin, Assistant District Attorneys*, for appellee.

---

[13] *McPherson v. State*, 274 Ga. 444, 452 (14) (553 SE2d 569) (2001).
[14] See id.
[15] *Holcomb v. State*, 217 Ga. App. 482, 484 (3) (458 SE2d 159) (1995).
[16] See id. and cits.
[17] *Matthews v. State*, 268 Ga. 798, 805 (7) (c) (493 SE2d 136) (1997).